## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IVAN D. FOSTER,<br><br>      Plaintiff,<br><br>    v.<br><br>VIRTUA HOSPITAL, *et. al.*,<br><br>      Defendants. | Case No. 22–cv–02340–ESK–EAP<br><br>OPINION AND ORDER |

**THIS MATTER** having come before the Court *sua sponte* pursuant to 28 U.S.C. §(Section) 1915(e)(2); and the Court finding:

    1. Plaintiff filed suit against defendants Virtua Hospital and Willingboro Municipality on April 22, 2022. (ECF No. 1 (Compl.).) The complaint alleged that plaintiff was arrested by two Willingboro police officers on April 3, 2020[1] and he was transported to Virtua Memorial Hospital from Burlington County Jail after he refused to have his temperature taken. (*Id.* p. 2.) While at the hospital, plaintiff allegedly was told that his rectal temperature would be taken, Willingboro officers refused to stop Virtua employees from threatening plaintiff or ask for soft restraints for plaintiff even though his handcuffs were hurting his left wrist, and plaintiff was subjected to a "thumb bend torture." (*Id.* pp. 2, 3.) Willingboro officers and Virtua employees further allegedly injured plaintiff's head, neck, and spine by forcing him into a police vehicle and he was thereafter denied medical care. (*Id.* p. 3.) Plaintiff was later processed at Burlington County Jail and taken back to Virtua, where he was involuntarily committed and subjected to further abuse at the North Brook Mental Facility. (*Id.*)[2]

    2. Plaintiff applied to proceed *in forma pauperis* on May 4, 2022. (ECF No. 7.) Judge Robert B. Kugler (Ret.) granted plaintiff's application in a summary order issued on August 31, 2022. (ECF No. 10.) The case sat

---

[1] Plaintiff's allegations in the original complaint refer to both 2020 and 2022. (Compl. p. 3.) Based on the allegations in the amended complaint (ECF No. 19 (Am. Compl.)), I presume that references to 2022 were typographical errors.

[2] The Court presumes that plaintiff was referring to Northbrook Behavioral Health Hospital located in Blackwood, New Jersey.

dormant until February 2, 2023 when the Clerk's Office entered a notice of call for dismissal for failure to effectuate service pursuant to Federal Rule of Civil Procedure (Rule) 4(m). (ECF No. 12.) Plaintiff did not respond and on February 28, 2023, Judge Kugler dismissed the case without prejudice pursuant to Rule 4(m) and Local Civil Rule 41.1(a). (ECF No. 13.)

3. On August 19, 2024, following Judge Kugler's retirement, plaintiff emailed the District's helpdesk claiming to have good cause for failure to effectuate service. (ECF No. 15.) Plaintiff claimed to have suffered a brain injury from a May 2022 automobile accident and that he did not receive service forms in the mail. (*Id.*) In response, I directed the Clerk's Office to reopen the case and mail two USMS Form 285s to plaintiff. (ECF No. 16.) I granted plaintiff 30 days to effectuate service and instructed plaintiff to fill out and return the USMS Form 285s. (*Id.*) After plaintiff failed to timely demonstrate that he effectuated service, I again dismissed his claims without prejudice for failure to comply with Rule 4(m). (ECF No. 17.)

4. Plaintiff sought additional time to return his USMS Form 285s (ECF No. 18) and filed the operative amended complaint, (Am. Compl.). The amended complaint adds Dennis W. Pullin, president of Virtua, as a defendant and expands on the original complaint's allegations. (*Id.*) Plaintiff claims that Virtua provided him with oxycodone and morphine on January 4, 2020, discharged him while he was still feeling the effects of the medication, and refused to let him stay until the effects wore off. (*Id.* pp.1, 2.) A security guard called plaintiff a "junky" and directed him to leave the hospital. (*Id.* p.2.) Plaintiff tried to lay down in his car, but Virtua employees called Berlin Township Police to have plaintiff leave the premises. (*Id.*) Plaintiff filed a *qui tam* action and emailed Pullin that he intended to sue him personally. (*Id.*)

5. The amended complaint goes on to allege that after being processed at Burlington County Jail on April 3, 2020, plaintiff was transported to Virtua's Mt. Holly emergency room. (*Id.*) Plaintiff asserts claims similar to those in his original complaint, including that Virtua employees threatened to take his rectal temperature, his handcuffs were hurting his wrist, and his left thumb was grabbed and injured. (*Id.* pp.2, 3.) Plaintiff further alleges that Virtua security guards held him in a painful position while his forehead temperature was taken and he later learned that he suffered fractured ribs. (*Id.* p.3.) Plaintiff believes that Pullin was behind his treatment due to the January 2020 incident. (*Id.*) Plaintiff was released from county jail the following afternoon, but returned to Mt. Holly for a mental evaluation. (*Id.* pp.3, 4.) He was then involuntarily committed for 14 days in violation of his federal and state constitutional rights and New Jersey law that requires two different psychiatrists to sign certificates for involuntary committal. (*Id.* pp.4, 5.)

Plaintiff attributes his involuntary commission to Pullin and Virtua in retaliation against him and to hide his prior injuries. (*Id.*) Plaintiff adds that he visited Virtua's Marlton facility in the Summer of 2023 and was treated well because employees believed that his lawsuit had been dismissed. (*Id.* p. 5.) Plaintiff claims that Virtua has monitored him more closely than the average patient to harass him and deny him adequate treatment. (*Id.* pp. 5, 6.)

6. In response to plaintiff's amended complaint, I entered an order on October 25, 2024 explaining that the filing of the amended complaint did not extend the time to effectuate service on Virtua and Willingboro and granted him until November 15, 2024 to provide proof of service. (ECF No. 20.) Plaintiff sought clarification of my order (ECF No. 23) and I held a status conference on November 18, 2024 (ECF No. 28). Following the status conference, I entered an order noting that it did not appear as though plaintiff's original complaint was ever screened pursuant to Section 1915(e)(2) and that I intended to do so. (ECF No. 29.) I further directed the Clerk's Office and United States Marshals Service to refrain from attempting to effectuate service until further ordered. (*Id.*)

7. Though Section 1915 refers generally to prisoners, *see* 28 U.S.C. § 1915, Section 1915(e)'s requirements apply to all complaints filed *in forma pauperis*, *Atamian v. Burns*, 236 F. App'x. 753, 755 (3d Cir. 2007). If a court grants a plaintiff's application to proceed *in forma pauperis*, it must screen the complaint pursuant to Section 1915(e)(2)(B) before issuing summonses. *See In re Wolf*, 696 F. App'x 599, 600 (3d Cir. 2017). When a plaintiff has been granted *in forma pauperis* status, the court must also screen their amended complaints. *Baasit v. Rutgers Health and Behav.*, Case No. 23–12384, 2024 WL 3594403, at *1 (D.N.J. July 31, 2024). Section 1915(e)(2)(B) directs courts to dismiss an action upon a determination that it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Talley v. Simandle*, 599 F. App'x 33, 34 (3d Cir. 2015) ("In screening IFP complaints, a district court must dismiss an action if it fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant immune to such a claim."). Courts use the Rule 12(b)(6) standard when determining whether to dismiss a complaint for failure to state a claim pursuant to Section 1915(e)(2)(B)(ii). *Elansari v. Univ. of Pa.*, 779 F. App'x 1006, 1008 (3d Cir. 2019).

8. Here, the amended complaint, like the original complaint, asserts a claim under 42 U.S.C. §(Section) 1983. (Compl. p. 4, Am. Compl. pp. 12, 13.) The amended complaint includes an Americans with Disabilities Act (ADA) claim in the same count as plaintiff's Section 1983 claim and an additional count alleging intentional infliction of emotional distress and violation of plaintiff's Eighth Amendment rights. (Am. Compl. pp. 10–13.)

9. Before reaching the merits of these claims, it is necessary to determine whether they are timely. *See Kornafel v. U.S. Postal Serv.*, 784 F. App'x 842, 843 n. 3 (3d Cir. 2019) ("If it is obvious from the face of the complaint that a claim is barred by the applicable statute of limitations, a federal court may dismiss the claim sua sponte under 28 U.S.C. § 1915(e)(2)(B)(ii)."). Claims of intentional infliction of emotional distress are subject to New Jersey's two-year statute of limitations for personal-injury actions. *See Campanello v. Port Auth. of N.Y. & N.J.*, 590 F. Supp. 2d 694, 699 (D.N.J. 2008); *see also* N.J. Stat. Ann. § 2A:14–2(a) ("Except as otherwise provided by law, every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued …."). The same two-year statute of limitations applies to plaintiff's Section 1983, Eighth Amendment, and ADA claims. *See Moore v. Walton*, 96 F.4th 616, 622 (3d Cir. 2024) (Section 1983); *Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (Eighth Amendment); *Hall v. Minner*, 411 F. App'x 443, 445 (3d Cir. 2011) (ADA). The majority of plaintiff's claims—including the January 4, 2020 and April 3, 2020 incidents and his April 2020 commitment—were therefore time-barred at the time plaintiff filed his original complaint on April 22, 2022.

10. Plaintiff alleges in the amended complaint that he did not learn that only one psychiatrist ordered his involuntary commitment until September 2024. (Am. Compl. p. 4.) A cause of action does not accrue under New Jersey's discovery rule until an injured party discovers, or should have discovered through the exercise of reasonable diligence, the basis of the claim. *Baskerville v. Stapleton*, Case No. 13–01750, 2019 WL 4686940, at *4 (D.N.J. Sept. 26, 2019) (discussing tolling in the context of a Section 1983 claim). A plaintiff invoking the discovery rule must assert facts demonstrating that they could not have—with reasonable diligence and intelligence—discovered the basis for their claim within the statutory period. *Id.*

11. Here, plaintiff refers to "NJ Law 30:4–27.1," (Am. Compl. p. 8), and I interpret him to be relying on N.J. Stat. Ann. § 30:4–27.10. The statute provides that court proceedings must be initiated for involuntary commitments by submitting to the court clinical and screening certificates. N.J. Stat. Ann. § 30:4–27.10(a). Both certificates may "not be signed by the same psychiatrist unless the psychiatrist has made a reasonable but unsuccessful attempt to have another psychiatrist conduct the evaluation and execute the certificate." *Id.*; *Matter of Commitment of T.G.*, Case Nos. A–0959–20, A–1319–20, A–1321–20, A–1351–20, A–1353–20, A–1371–20, 2022 WL 17747353, at *6 n. 2 (N.J. Super. Ct. App. Div. Dec. 19, 2022). The two-psychiatrist rule relied upon by plaintiff therefore is not absolute. I further find that plaintiff's bare claim that one psychiatrist signed both certificates and attached medical records do not

4

demonstrate that the statute was violated.   More to the point, plaintiff has not asserted facts showing that he could not have discovered the basis of his claim within the statutory period with reasonable diligence and intelligence.  *See Baskerville*, 2019 WL 4686940, at *4.

12. Lastly, the amended complaint claims that at some point in 2023, Virtua and Pullin refused to provide plaintiff with adequate pain medication for a foot injury.  (Am. Compl. pp.9, 11.)   This allegation represents plaintiff's lone timely claim, but I nonetheless conclude that it is insufficient to support a cause of action for intentional infliction of emotional distress.

13. "A claim of intentional infliction of emotional distress requires the plaintiff to plead 'intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe.'"  *Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 738 (D.N.J. 2015) (quoting *Taylor v. Metzger*, 706 A.2d 685, 694 (N.J. 1998)).   Plaintiff's allegations that "staff refused to give the plaintiff adequate pain medication due to [V]irtua labeling the plaintiff in their system as a drug addict" and that inadequate pain medication was provided in a reckless manner as part of a plan to mistreat plaintiff (Am. Compl. pp.9, 11) do little to plead that plaintiff suffered severe distress.   Therefore, the claim must be dismissed for failure to state a claim.  *See Davidson v. Corr. Med. Servs., Inc.*, Case No. 08–03580, 2010 WL 324449, at *13 (D.N.J. Jan. 19, 2010) (dismissing the plaintiff's intentional infliction of emotional distress claim because it lacked allegations as to the severity of the emotional distress).

Accordingly,

**IT IS** on this **28th** day of **February 2025**   **ORDERED** that:

1. Plaintiff's amended complaint (ECF No. 19) is **DISMISSED** pursuant to Section 1915(e)(2)(B)(ii).

2. The Clerk is directed to mail a copy of this order to plaintiff's address of record and mark this case **CLOSED**.

    */s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**